# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

SAMUEL E. STAGNER,

    PLAINTIFF,

VS.                                                           CASE NO.: CV-11-J-3212-S

CAROLYN V. COLVIN,[1]
Acting Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for disability insurance benefits due to fibromyalgia, depression, anxiety, pain disorder, hypertension, acid reflux, mild scoliosis of the spine, and restless leg syndrome (R. 33). Plaintiff filed an application for a period of disability and disability insurance benefits (DIB), on November 9, 2009, alleging that

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* Fed. R. Civ. P. 25(d).

he became unable to work on March 26, 2008 (R. 113-21). Plaintiff's application was denied initially (R. 68-72). On January 27, 2011, the ALJ issued a decision denying plaintiff's application (R. 11-21). The Appeals Council denied plaintiff's Request for Review (R. 1-6). Plaintiff filed a complaint in the United States District Court for the Northern District of Alabama, and the matter was remanded for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g) (R. 461). The Appeals Council set aside the previous denial of review, considered the new evidence and issued a denial decision dated June 29, 2012 (R. 456-59). Plaintiff has exhausted his administrative remedies and has filed a timely action. This case is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for calculation of the plaintiff's benefits.

**Factual Background**

Plaintiff was forty-six years old at the time of the ALJ's decision (R. 115). He completed the twelfth grade (R. 157), and worked as a sheet metal mechanic (R. 154). He last worked on March 26, 2008, which is his alleged on-set date.

Plaintiff claims that he is totally disabled due to Fibromyalgia, Major Depressive Disorder, and Anxiety and Pain Disorder. Moreover, plaintiff claims that

these conditions and the medications prescribed therefor cause various non-exertional impairments such as pain, confusion, drowsiness and slurred speech.

At the hearing, plaintiff testified that he had worked at PemCo from August of 1998 until March of 2008, at which time he was laid off (R. 36, 38). When he was finally recalled to report back to work following the layoff, he was required to submit to a physical and was not permitted to return to his job due to the prescribed pain medication he was taking at that time (R. 38). Plaintiff has not worked since March of 2008 (R. 36).

Prior to being laid off in March of 2008, plaintiff missed an average of two days per week due to his medical condition (R. 36). In order to prevent being fired, the plaintiff started taking medical leave under the Family Medical Leave Act (FMLA) (R. 36). During this period of time, after he had worked two days in a row, he would have to miss the following day due to his pain in order to be able to return to work (R. 39). During the latter stages of his employment, plaintiff began taking methadone[2] prescribed by his pain management doctor in an effort to continue to

---

[2] Methadone has been studied as a therapy for cancer pain and other chronic pain states. It is an appropriate replacement opioid when pain remains poorly controlled or when side effects of other opioids limit dosage escalation. Available data suggest that methadone is effective in relieving cancer pain and has a similar analgesic efficacy and side effect profile to morphine. In a study of cancer patients with uncontrolled pain or significant side effects from opioids, 80 percent of patients reported improvement in pain control and reduction of adverse effects following transition to methadone. It may be used in patients with morphine allergy because methadone is synthetic and offers no cross-allogenicity.
http://www.aafp.org/afp/2005/0401/p1353.html (Last visited May 22, 2013).

work. At the time of the hearing, he was on 60 mg. per day (R. 41). He also takes an anti-inflammatory medication, Klonopin[3] and Celexa[4] for Depression. According to plaintiff, the combination of these medications makes him sleepy and drowsy and sometimes causes confusion and slurred speech (R. 42).

Plaintiff suffers pain in his back and legs due to fibromyalgia. He tries to remain in a reclined position most of the day in an effort to keep his pain level down (R. 45). Activity causes his pain to increase to a severe level (R. 44). He spends approximately ten hours per day either in a reclined or prone position (R. 45). He is unable to kneel, crawl, bend, stoop, or squat as a result of his condition (R. 46).

Plaintiff's primary care physician, Thomas J. Smitherman, III, M.D., has treated him for approximately 15-20 years (R. 40). The record on appeal contains Dr. Smitherman's medical records pertaining to plaintiff which span a period of over a decade beginning in 2001 through at least March of 2011 (R. 209-316, 424, 446-455).

---

[3] Clonazepam (generic for Klonopin) is used alone or in combination with other medications to control certain types of seizures. It is also used to relieve panic attacks (sudden, unexpected attacks of extreme fear and worry about these attacks). Clonazepam is in a class of medications called benzodiazepines. It works by decreasing abnormal electrical activity in the brain. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682279.html (Last visited May 22, 2013).

[4] Citalopram (generic for Celexa) is used to treat depression. Citalopram is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs). It is thought to work by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html (Last visited May 22, 2013).

The record reflects that Dr. Smitherman referred plaintiff to Dr. J. Steven Hankins in September of 2003, who found probable Fibromyalgia - Myofascial Pain Syndrome (R. 200-201). On examination, plaintiff was found to have palpable tenderness of the cervical base bilaterally and trapezius musculature and rhomboid musculature bilaterally with trigger points noted, as well as tenderness of the lower paraspinals of the lumbar spine (R. 201). On January 3, 2005, plaintiff was examined by Dr. Mark Bailey of Alabama Neurology and Pain Medicine, where he has been treated for chronic pain with methadone continuously from January 2005 up to the time of the hearing (R. 379-380). The records reflect regular monthly office visits over this time period with plaintiff rating his pain at a 4 or 5 out of 10 while on methadone (R. 317-377).

A consultative psychological examination conducted on January 28, 2010, by Donald W. Blanton, Ph.D., notes that plaintiff no longer has hobbies but used to enjoy hunting and fishing (R. 403). Dr. Blanton found that plaintiff had depression problems associated with chronic pain and lifestyle changes (R. 404).

On March 29, 2010, Dr. Smitherman completed a Physical Capacities Evaluation form in which he opined that plaintiff, in an eight-hour work day, could sit, stand and walk for a total of one hour for each activity and that plaintiff should never bend, squat, crawl, or climb; that he could reach above shoulder level only

occasionally; that he had a total restriction involving unprotected heights and driving automotive equipment; and that he had moderate restrictions involving being around moving machinery, exposure to marked changes in temperature and humidity, and exposure to dust fumes and gases (R. 424-425). Dr. Smitherman also recommended that plaintiff seek disability benefits (R. 431).

Dr. Hirenkumar Jani, a consultative examiner, reported in January 2010 that plaintiff was able to walk on his toes and heels, had a negative Romberg test, had a negative straight leg raise test, and had 5/5 bilateral motor strength (R. 396-97). Plaintiff told Dr. Jani he could cook, mop, and sweep but could not do yard work because of pain (R. 395). Dr. Jani stated plaintiff could stand and walk at least 6 hours without any restrictions, had no sitting restrictions, could lift and carry 100 pounds occasionally and 50 pounds frequently, and had no postural or manipulative restrictions (R. 398).

According to the Vocational Expert (VE), the plaintiff's past work was heavy and skilled (R. 50). The VE testified that an individual who is able to lift, carry, push, pull three pounds occasionally and ten pounds frequently; able to stand and/or walk for about a total of six hours per workday and able to sit for at least a total of six hours per workday; should avoid exposure to unprotected heights and dangerous machinery, able to engage in no more than occasional bending, squatting, crawling,

or climbing; able to reach above shoulder level no more than occasionally; able to understand, remember, and carry out simple tasks only; able to persistently concentrate for period of about two hours at a time; would work best in a well-spaced work environment; would work best with a few familiar coworkers; requires customary breaks; may miss one or two days per month due to his symptoms; is able to tolerate casual contact with the public and is able to tolerate supportive, non-confrontational supervisory feedback; and is able to tolerate frequent workplace changes that are gradually introduced  would not be able to perform plaintiff's past work as a sheet metal mechanic (R. 51). The VE further testified that such an individual could perform light, unskilled work if the restrictions of a well-spaced work environment and missing 1 to 2 days per month were removed (R. 51 -52). The VE stated that with these restrictions included there would not be any jobs in the economy that and individual such as the plaintiff could perform (*Id.*).

Robert Estock, M.D., a state agency medical consultant, found that plaintiff would be limited to a well-spaced work environment and may miss one to two days of work each month due to his mental health (R. 420-423). The ALJ found that these statements were not supported by the medical record, however, he considered Dr. Estock's other statements as well supported by the record (R. 18).

Plaintiff's record was supplemented with an examination performed by Samuel A. Saxon, Ph.D. Dr. Saxon opined that plaintiff "experience[s] a great deal of pain and discomfort of a level that certainly would inhibit even a very sedentary job." (R. 466). Dr. Saxon assigned plaintiff a Global Assessment of Functioning (GAF) of 35[5] indicating major impairment in several areas (R. 467). Dr. Saxon administered a Burns Anxiety Inventory and Zung Self-Rating Scale of Depression which suggested extreme anxiety or possibly even panic episodes and that plaintiff is severely depressed (*Id.*). At the time of Dr. Saxon's assessment plaintiff was taking 40 mg Celexa daily, 1mg Kolonopin three times a day, Mobic 15 mg for pain, Lisinopril 20mg for blood pressure, and Methadone 10 mg two tablets three times a day (*Id.*). Dr. Saxon found that plaintiff "does not have the necessary psychological, mental and cognitive abilities to manage fulltime employment of any kind" (*Id.*).

The ALJ concluded that plaintiff suffered from the severe impairments of fibromyalgia, depression, anxiety, and pain disorder (R. 13). Hypertension, acid reflux, mild rotoscoliosis, and restless leg syndrome were all found by the ALJ to

---

[5]"Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM) IV-TR 34 (American Psychiatric Association, 4th ed. 2000).

cause only minimal limitations (*Id.*). The ALJ then found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 14). The ALJ, however, only examined plaintiff's mental impairments at this step (R. 14-15). The ALJ's only mention of pain disorder or fibromyalgia at this step was to state that "claimant alleges difficulty with personal hygiene tasks, such as dressing, shaving, and toileting due to pain" (R. 14).

In order to reach such a conclusion, the ALJ implicitly ignored the findings of plaintiff's treating physician, Dr. Smitherman, who opined that "[b]ecause of the severity of [plaintiff's] pain and debilitation, he [has been] unable to continue gainful employment. It is my professional opinion that Mr. Stagner is now permanently and totally disabled for all intents and purposes" (R. 445). Indeed, the ALJ substituted his judgment in assessing such impairments, finding the plaintiff had no more than mild to moderate difficulties (R. 18).

The ALJ concluded that the plaintiff could perform a limited range of unskilled, light work (R. 20). On that basis, the ALJ ruled that the plaintiff was not under a disability at any time through the date of the decision (*Id.*).

**Standard of Review**

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993).

However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

**Legal Analysis**

The ALJ determined the plaintiff retained the residual functioning capacity to perform a limited range of unskilled, light work. To reach this conclusion, the ALJ disregarded large portions of medical evidence, misrepresented other records and completely ignored plaintiff's treating and consulting medical professionals' opinions. Most glaringly, the ALJ and the Appeals Counsel ignore the opinions of Dr.

Smitherman and Dr. Saxon regarding the severity of plaintiff's pain, depression, and anxiety.

As set forth above, Dr. Smitherman, has treated plaintiff for more than a decade (R. 40, 209-316, 424-425, 446-455). He opined that Mr. Stagner "is now permanently and totally disabled for all intents and purposes" (R. 445). Dr. Smitherman's opinion is based on a long history of treating plaintiff and familiarity with plaintiff's ongoing pain management treatment. In completing a Physical Capacities Evaluation, Dr. Smitherman noted that plaintiff plaintiff could sit, stand, or walk for no more than one hour each during an eight hour workday (R. 424). He further noted that plaintiff could not bend, squat, crawl, or climb and could only occasionally reach above shoulder level (R. 425).

The ALJ chose instead to rely on a one-time examination by Dr. Jani, a consultative physician (R. 395-398). Dr. Jani's assessment, however, does not support a finding that plaintiff is not disabled. Dr. Jani diagnosed fibromyalgia and anxiety/depression (R. 397). Dr. Jani advised that plaintiff needed further evaluation for his anxiety and depression (R. 398).

Plaintiff's mental status was evaluated by the examination of Donald W. Blanton, Ph.D. (R. 399-402). Dr. Blanton noted that plaintiff no longer has hobbies and that his insight was limited. Dr. Blanton stated that plaintiff was obsessed about

his pain problems (R. 400). Dr. Blanton's diagnostic impression was of pain disorder with depression, adjustment reaction with depression, and obsessive compulsive personality (R. 401).

Robert Estock, M.D., a non-examining, non-consulting, state agency physician, believed that plaintiff's mental status would require a well spaced work environment (R. 422). Dr. Estock also stated that plaintiff may miss 1 to 2 days per month due to symptomology (*Id.*). Although this is bolstered by the fact that plaintiff was missing 1 to 2 days *per week* due to his symptoms (R. 36), the ALJ chose to ignore these findings when evaluating plaintiff's residual functioning capacity (R. 18).

The ALJ chose, without any evidentiary support, to simply ignore Dr. Smitherman's findings and the Appeals Counsel further ignored Dr. Saxon's findings, and both substituted their own opinions as to plaintiff's physical and mental state. The ALJ further chose to ignore the plaintiff's unrefuted testimony that his pain caused him to miss two days of work per week. The ALJ found Dr. Smitherman's opinions to "conflict with the objective medical evidence" (R. 18). The ALJ then found only those portions of the non-examining physician's (Dr. Estock) opinion that would prevent plaintiff from working to be "not supported by the medical evidence" (R. 18). However, the court finds a straight reading of the medical opinions in this record reveals that the combination of plaintiff's impairments made him

unemployable as opined by treating physician Dr. Smitherman and consulting physician Dr. Saxon, and further supported by specific limitations placed on plaintiff by Dr. Estock.

The ALJ also disbelieved plaintiff's treating physician's opinion that the plaintiff is unable to complete a full workday because medical treatment notes state the plaintiff's pain behaviors are mild and his pain is controlled (R. 18). However, the ALJ fails to note that plaintiff's pain is regularly rated a 4 to 6 out of 10 while on 40 mg per day of methadone and participating in a pain management clinic. Methadone treatment is used for treatment in chronic pain states. *See supra* n. 2. The ALJ also inexplicably discounted plaintiff's reported side effects from his treatment.[6]

The ALJ concluded that because plaintiff has described daily activities including making phone calls, running errands, and taking walks, his statements regarding his limitations are not supported (R. 17). The plaintiff testified that on an average day with no activity his pain is at a 3 or 4 while on medication (R. 44). If he

---

[6]"Side effects associated with methadone are similar to those incurred with other muopioid agonists, including pruritus, nausea, constipation, confusion, sedation, and respiratory depression. Excess sweating (diaphoresis) and flushing are common with oral methadone dosing. Caution should be taken with initiation of therapy and dosage increases because severe toxicities may not become apparent for two to five days. In a study of patients converted to methadone therapy in an outpatient setting, 20 of 29 participants experienced some degree of toxicity, most frequently mild drowsiness, during initial titration. Side effects such as sedation and respiratory depression are increased when methadone is combined with alcohol or other drugs." http://www.aafp.org/afp/2005/0401/p1353.html (Last assessed May 22, 2013).

performs any activity like sweeping the floor it goes to at least a 6 (*Id.*). He gets up at 11:00 and spends most of his day lying in a reclined position to prevent exacerbating the pain (R. 46-47). This testimony was wholly ignored by the ALJ, but completely supported by Dr. Smitherman's findings.

The fact that the plaintiff can make phone calls, drive to the grocery store and other minimal daily activities do not translate into being able to perform work on a full time regular basis. *See Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir. 1997); *Venette v. Apfel,* 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998). This is especially true in light of plaintiff's testimony that movement causes increased pain. Of course, the plaintiff's testimony concerning his pain, anxiety and depression are supported by the opinions of Dr. Smitherman and Dr. Saxon, who confirmed the same through examination and testing (R. 209-316, 424-425, 446-455, 466).

The court further finds the record devoid of substantial evidence to support the ALJ's decision with regard to the medical evidence. Although the ALJ uses pieces of the consultative examination medical records to discount the treating physicians' opinions that the plaintiff is unable to work, no such retraction by the treating physicians appears in the record. Rather, after recommending that plaintiff seek disablity in February 2010 (R. 431), Dr. Smitherman completed a physical capacities evaluation in March 2010 stating plaintiff could not sit, stand or walk for more than

an hour in an eight hour workday (R. 424), and then again opined on March 23, 2011 that plaintiff was unable to work (R. 445). However, the ALJ opted to give little weight to Dr. Smitherman's opinions because plaintiff's pain seems to be "controlled" (R. 18). The court notes "controlled" does not mean "cured." In addition, by ignoring Dr. Saxon's opinion that plaintiff is disabled due to his mental state the Commissioner has ignored uncontroverted evidence with no justification for doing so. Dr. Smitherman's and Dr. Saxon's statements clearly support a finding that plaintiff is not capable of gainful employment.

When evaluating an applicant's claim for social security disability benefits, the ALJ must give "substantial weight" to the opinion of the applicant's treating physician "unless good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). Here, that good cause is lacking. The Eleventh Circuit has defined "good cause" as: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Lewis*, 125 F.3d at 1440 (quotation marks and citations omitted). If the ALJ disregards or accords less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and

the failure to do so is reversible error. *Id*. The court finds none of the indicia of "good cause" in the facts before this court.

Nothing in the record supports the ALJ's conclusion that the plaintiff can perform the range of light work crafted by the ALJ. The court finds that the ALJ could only reach his conclusions by ignoring or substituting his judgment for the medical evidence contained in the record, as set forth above.

This court finds that the records of the treating physicians offer substantial support for the plaintiff's allegations. No medical evidence contradict their opinions and conclusions, none of those opinions were ever withdrawn, and none of them ever opined that the plaintiff was malingering. Rather, the improvements in medical records seem to reflect plaintiff's complete cooperation in a pain management program and not that he was physically or mentally capable of substantial gainful employment. No medical evidence in the record refutes the plaintiff's allegations.

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the ALJ has erred and the record

lacks substantial evidence supporting the conclusion of no disability. *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). Because the ALJ's findings contradict the medical evidence in the record, this case is due to be reversed.

## IV. Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 F.3d at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984).

Based on the lack of substantial evidence in support of the ALJ's findings and the ALJ's failure to apply the proper legal standards, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** this the 10th day of June, 2013.

*/s/ Inge Prytz Johnson*
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE